**Hugh C. JOHNSON, Trustee in voluntary liquidation of H & J Investment, Inc., Respondent,**

v.

**A-1 PETROLEUM, INC., et al., Appellants.**

**Roger A. FIDE, et al., Defendants,**

and

**A-1 Petroleum, Inc., et al., Appellants,**

v.

**Hugh C. JOHNSON, Trustee in voluntary liquidation of H & J Investments, Inc., Respondents.**

No. C7-84-179.

Court of Appeals of Minnesota.

July 31, 1984.

Thomas L. Kimer, Wendy J. Wildung, Steven L. Severson, Faegre & Benson, Minneapolis, for respondent.

John M. James, John D. Hagen, Jr., Minneapolis, for appellants.

Heard, considered and decided by PARKER, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

FORSBERG, Judge.

Appellants A–1 Petroleum, Inc., Red-Top Company, Crown Company, Inc., and Robert P. Mack appeal from the summary judgment entered against them in two related lawsuits that had been consolidated for trial. The consolidated actions arose out of respondent Johnson's sale of certain property and leasehold interests to appellants in 1970. The contract for sale, paragraph 9, provided for the payment of $50,-000 of the purchase price on February 3, 1980, or within one year thereafter.

The contractual payment was not made. In May 1980, respondents brought an action for breach of contract and various related claims against appellants. In June 1982, appellants commenced a separate action against respondents for declaratory judgment to construe the meaning of the disputed contract language. The court consolidated the actions for trial.

A pretrial conference was held. The parties agreed that they would bring cross motions for summary judgment on the contract interpretation. Respondent moved for summary judgment on the merits. Appellants moved for partial summary judgment on the one issue of contract construction. A stipulation of facts was entered for the purpose of the summary judgment motions.

The trial court entered summary judgment on the merits for respondent, finding that no genuine issue of material fact existed and that the contract's meaning was plain. Judgment was entered against appellants individually for $61,123.23 ($50,000 plus interest). This appeal ensued.

## FACTS

The parties entered into a stipulation of facts for the purpose of deciding motions for summary judgment. On or about April 22, 1970, Johnson and appellant A–1 Petroleum, Inc. entered into a sales agreement whereby Johnson agreed to sell to A–1 Petroleum for stated consideration certain real and personal property and leasehold interests located in the State of Minnesota. Among the property to be acquired by A–1 Petroleum was a gasoline service station and restaurant located in St. James, Minnesota ("the Property").

The Agreement provided that a stated portion of the purchase price for the Property was to be paid at the time of sale. The remainder of the purchase price was to be determined and paid on or after February 3, 1980, in accordance with Paragraph 9 of the Agreement.

After it acquired the Property, A–1 Petroleum leased it to appellant Crown Co Co., Inc. a Minnesota corporation. A–1 Petroleum subsequently assigned its lessor's interest in the Crown Co Co. lease to appellant Robert P. Mack, d/b/a Red-Top Company. Mack and Red-Top Company later assigned the lessor's interest in the Crown Co Co. lease to Crown Co Co. Crown Co Co. is successor-in-interest to the vendee's interest of A–1 Petroleum in the Agreement and in said Property.

At the time of the sale, Minnesota State Highway 60 was a two-lane paved roadway running through downtown St. James, Minnesota. In December 1979, the State of Minnesota opened a four-lane paved roadway that separated from Minnesota State Highway 60 just northeast of St. James and circled St. James to the south, rejoining Minnesota State Highway 60 at the southwest edge of St. James. That roadway is now designated as Minnesota State Highway 60.

After the sale, Crown Co Co. operated a restaurant and gasoline service station on the Property. The restaurant closed prior to July 1978 for reasons other than the location of Minnesota State Highway 60. Because of general economic conditions and for reasons other than the location of Minnesota State Highway 60, the gasoline service station on the Property was closed for regular business in late July 1978. Since late July 1978, Crown Co Co. has used the Property for two weeks per year in order to retain certain licenses and gasoline allocation rights.

On or after February 2, 1980, Johnson made demand upon appellants for payment of $50,000 pursuant to Paragraph 9 of the Agreement. As of this date, appellants have not paid Johnson any sum under Paragraph 9 of the Agreement.

## ISSUES

1. Did the trial court err in granting summary judgment in favor of respondent?

2. Did the court err in granting judgment against all appellants individually in this action?

## ANALYSIS

### I.

Rule 56.03, Minn.R.Civ.P., provides that summary judgment shall be rendered if there are no genuine issues of material fact and that a party is entitled to judgment as a matter of law. The parties stipulated that there were no genuine issues of material fact for the purpose of their summary

judgment motions. Therefore, the question of law before the trial court was whether paragraph 9 of the parties' April 22, 1970, agreement was "reasonably susceptible to more than one meaning."

■ The court found that the plain language of the paragraph is susceptible to only one meaning: that the agreement is clear and unambiguous. Paragraph 9 states, in relevant part:

9. The value of the real estate located near St. James, Minnesota, as set forth in subparagraph 3c hereof, has been agreed to by the parties in contemplation of construction and opening of a Highway 60 by-pass near St. James, Minnesota, within a period of ten (10) years from February 2, 1970. If said by-pass is not opened on or before February 2, 1980, or is so opened on or before said date and said by-pass is so located that there is no adverse effect on the business of the gasoline station, then and in that event, Buyer shall be required to pay to Seller, on February 3, 1980, the sum of Fifty Thousand Dollars ($50,000) without interest from the date hereof, which sum shall be in addition to the sum called for in subparagraph 3c hereof. If said by-pass is opened on or before February 2, 1980, and said by-pass is so located that there is an adverse effect on the business of the gasoline station, the parties hereto, within one (1) year after said by-pass is opened, will agree on the additional compensation, if any, to be paid for said St. James real estate, which additional consideration, if any, shall represent the then fair market value of said property.

The court reasoned that paragraph 9 required appellants to pay $50,000 to respondents on February 3, 1980, if either of two contingencies came about. They are specifically:

(1) That the Highway 60 by-pass was not opened on or before February 2, 1980; or

(2) That if the Highway 60 by-pass was opened within the allotted time, it was so located as to have no adverse effect on the business of the gasoline station.

As seen from the stipulated facts, the Highway 60 by-pass was opened prior to the February 2, 1980, deadline. However, the second contingency was satisfied. The location of the by-pass had no adverse effect on the business of the gas station. The condition has been met simply by virtue of the fact that the defendant quit his gasoline station business prior to the opening of the Highway 60 by-pass. There was no adverse affect upon defendant's gasoline station business because there was no gasoline station business for the by-pass to adversely affect."

Appellants contend that the above holding is "clearly erroneous." Specifically, they argue that it was error for the court to rule that in February 1980 there was no gasoline station "business" for the bypass to adversely affect. They contend that the court should have held that "an adverse effect on the business of the gasoline station" was possible and submitted the case to a jury to decide (1) what specific economic factors caused the station's closure; (2) when the economy improved, could the station have been reopened profitably, assuming the traffic count remained at past levels; and (3) did the by-pass have an adverse effect on the traffic count, or on other business factors affecting the station?

The trial court specifically rejected this interpretation. In its memo the court said:

Defendants contend that the agreement is ambiguous and suggest that the Court read paragraph 9 in one of two alternative ways. First, that the seller is entitled to $50,000.00 only if the by-pass is so located that there would have been no adverse affect on the business of the gasoline station if it had been in operation on February 2, 1980. Secondly, that the seller is entitled to the full $50,000.00 only if the by-pass is so located that there is no adverse affect on the value of the real estate upon which the gasoline station is located. A reasonable person reading paragraph 9 would not apply ei-

ther of these interpretations to the writing. If the defendants had intended the paragraph to read as they suggest they could have easily substituted the words. It is clear that neither of the alternative interpretations was intended by the parties at the time of the agreement.

We agree. Appellant, by closing the business prior to February 2, 1980, has effectively eliminated the stated condition of adverse effect.

■ Appellants further contend that the trial court committed error in enforcing the agreement based on the doctrine of impracticability. In *Powers v. Siats*, 244 Minn. 515, 520, 70 N.W.2d 344, 348 (1955), the Minnesota Supreme Court declared that the doctrine was applicable

> to those situations in which events unforeseen at the time of contracting produce an excessive hardship upon one of the parties *which was not reasonably contemplated or expected at the time of the execution of the contract.*

(Emphasis supplied). Appellants argue that the bad economy was unforeseen and that a jury should determine such questions as "whether the parties in 1970 reasonably contemplated such factors as a world-wide oil cartel and prohibitive interest rates," etc. We disagree.

The respondents, under the terms of paragraph 9, agreed to bear the risk of the possible adverse effect the proposed bypass might have on the business of the gasoline station. Respondents did not agree to bear any other risks relating to the gasoline station. In particular, they did not agree to bear the risk in the ten years after the station was sold that economic conditions might make it impossible for the appellants to continue to operate the station as a business.

From a review of the agreement and the facts, the doctrine of impracticability is inapplicable to these actions as a matter of law. Therefore, the trial court did not err in holding that unfairness or hardship was irrelevant.

## II.

■ As to the second issue, it is necessary to remand to determine the respective liabilities of the individual appellants. It is apparent from the stipulation of facts that the parties ignored this question. Therefore, it is understandable why the trial court did not resolve this issue. However, it is clear from the record that the parties do not stand in the same posture, and their respective liability should be determined.

## DECISION

We affirm the order and judgment of the trial court in granting summary judgment in favor of respondent. We remand for a determination of the respective liabilities of the individual appellants.